UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                                Criminal Case No.  07-20283

Marcus Deangelo Lewis,                              Sean F. Cox
                                                           United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

In this criminal action, Defendant Marcus Deangelo Lewis ("Defendant") was convicted of a drug offense and was sentenced to 183 months of imprisonment.  The matter is before the Court on Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), which is based upon concerns about the ongoing novel coronavirus pandemic ("COVID-19").  This motion asks the Court to allow Defendant to serve the remainder of his sentence at home because he is concerned that he could contract the virus, and that he may be vulnerable to severe illness if he were to contract it.  The Court concludes that a hearing is not warranted and orders that the motion will be decided based upon the briefs.  As explained below, the Court shall DENY the motion.

**BACKGROUND**

In this criminal case, Defendant pleaded guilty to Conspiracy To Possess with Intent to Distribute and to Distribute Marijuana, Over 1,000 Kilograms, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Because Defendant was determined to be a career offender, his guidelines range was computed at 262 to 327 months of imprisonment.  However, the government filed a

motion for sentence reduction based on substantial assistance and this Court ultimately sentenced Defendant to a term of 183 months of imprisonment. (*See* ECF No. 377, Amended Judgment).

This Court imposed sentence upon Defendant on May 20, 2020. Before doing so, this Court carefully considered the applicable § 3553(a) factors as they relate to Defendant and discussed them on the record:

> THE COURT: You pled guilty to Count One, conspiracy to possess with intent to distribute marijuana over 1,000 kilograms on January 7th, 2009 with a Rule 11.
> In a moment, I'm going to impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in Section 18 U.S.C., Section 3553.
> I have considered the nature and circumstances of the offense. You were part of an organization, a conspiracy that was involved in importing and bringing into the State of Michigan a significant amount of marijuana. It is a serious, serious offense.
> I have considered your history and your characteristics. Let's first take a look at your criminal history. We start at age 24, 1989, conspiracy to possess with intent to distribute and to distribute cocaine.
> You were sentenced to 69 months at that time. You were placed on supervised release, as well. Yet, while on supervised release, in May of 1996 you were arrested and subsequently convicted of another drug dealing charge, conspiracy to possess with intent to distribute and to distribute controlled substances.
> You were imprisoned for that crime, that conviction. And again, you were placed on supervised release in October – again, you were placed on supervised release, and yet you picked up another arrest and conviction involving possession with intent to distribute marijuana over 45 kilograms in the Third Circuit Court. And, of course, you picked up this arrest and this conviction for which you are being sentenced today.
> So from 1989, we see a clear pattern of dealing drugs, whether it's cocaine, whether it's marijuana. And we see a pattern of you being placed on release, and while you're on supervised release you pick up -- you go back to dealing drugs and you pick up a subsequent conviction.
> So we do have a distinct, and serious and troubling pattern of continued criminal behavior, continued involvement with drug dealing. That is very, very, very troubling.
> I have considered your history and your characteristics. You had a difficult childhood. You didn't know your father, your parents weren't married. You had a very abusive stepfather who was abusive to not only your mother, but

also you.

Your mother was tragically killed in 1989. You have one sister, you have one brother and one half-brother. You do have three daughters. They seem to be doing very well in life. They're college students.

You have been married twice. And prior to the time of your arrest and being placed in custody in this case, you were living -- you were involved in a relationship with Crystal Ingram.

You have really no emotional or mental health issues. There's a question of whether or not you have a substance abuse problem. In the past it was -- your history reveals you did have a substance abuse problem and that was apparently treated during your last stint in prison.

You do have a high school education. You really don't have any vocational skills. And you really have a sketchy employment record, which I'm sure deals with the amount of time you've been in prison since 1989, going back over the last 20 years. You spent most of the last 20 years in prison.

So I have considered your history and characteristics. And quite frankly, sir, I see an individual who continues engaging in criminal behavior. That's what you've done for the last 20 years, despite being imprisoned on more than one occasion. You go back to the same pattern of behavior.

And you made a statement that you were engaging in contact that was somewhat safe? You thought you were engaging in conduct that was somewhat safe? I don't view being involved with drugs, drug dealing, to be somewhat safe. To me, that's very, very, very dangerous activity that's coupled with -- goes hand-in-hand with guns and violence, what you just told me a moment ago that you abhor.

I have considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for what you did, to afford adequate deterrence to criminal conduct, to protect the public from further crimes by you.

Your history indicates that there is a very, very high probability that you will continue to engage in criminal activity, but the Court has also considered the need for the sentence imposed to protect the public from further crimes by you.

Again, to protect -- to provide you with needed educational or vocational training, medical care, other correctional treatment in the most effective manner.

The Court has considered the kinds of sentences available. Of course, the minimum, the statutory minimum is ten years. The maximum is life. I did accept the Rule 11, so any sentence imposed is capped at 327 months. Probation is not an option. And the government has filed a motion, a 5K1.1 6 motion which I will address shortly.

So the Court has considered the kinds of sentences available, the sentencing range. Again, the guidelines which, of course, are advisory, 262 to 327.

The Court has considered all pertinent policy statements and the Court has also considered the need to avoid unwarranted sentence disparities amongst

3

      defendants with similar records who have been found guilty of similar conduct.
        This was a rather large conspiracy, in my mind.  I will be sentencing several of your co-defendants in the future. I did sentence Mr. Laron Brewer, L-a-r-o-n.  His guidelines were 47 to 57 months.  I did sentence him to 55 months.  It isn't reflected in the presentence report. Ms. Beck, you indicated I did sentence Mr. Zarate?
        MS. BECK:  That's correct.  He's defendant number seven.  He was sentenced to 140 months.
        U.S. PROBATION OFFICER:  Your Honor, his criminal history was higher.  The probation department found it higher.  His guideline range was 140 to 175.
        THE COURT:  Okay.  So his guidelines were what, 140 –
        U.S. PROBATION OFFICER:  To 175.  And you sentenced him to 140.
        THE COURT:  Okay.  Those are the only two individuals that have been sentenced so far.
      And I have considered, looked at the sentences that I did impose on the two individuals that I have, in fact, sentenced in this case already.
      So the Court has carefully considered all 18 U.S.C. Section 3553(a) factors which I just articulated on the record.

(ECF No. 386, Sentencing Transcript).

Defendant is now serving his sentence, which he began serving on June 30, 2008.  He is currently being housed at FDC Sea Tac, in Seattle, Washington.  (ECF No. 445-4).  His projected release date is December 31, 2021.

On August 31, 2020, Defendant filed a Motion for Compassionate Release, claiming that he is at risk of the more severe complications from COVID-19, if he were to contract the virus, because of his claimed medical conditions.  (ECF No. 440).  Defendant is fifty-six years old and claims that he has diabetes and high blood pressure.  The Government concedes that Defendant is also obese and has mild but chronic kidney disease.

The Government agrees that Defendant has exhausted his administrative remedies but opposes the motion on the merits.  It argues that although Defendant is at heightened risk from COVID-19 due to his medical conditions, his motion should be denied because a consideration

4

of the § 3553(a) factors shows that Defendant "is undeterred and remains dangerous due to his predilection for selling drugs." (ECF No. 445 at 3).

## ANALYSIS

"The 'compassionate release' provision of 18 U.S.C. § 3582 allows district courts to reduce the sentences of incarcerated persons in 'extraordinary and compelling' circumstances. 18 U.S.C. § 3582(c)(1)(A)." *United States v. Jones*, __ F.3d __, 2020 WL 68117488 at *1 (6th Cir. Nov. 20, 2020).

"An imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request – whichever is earlier." *Id.* at *4. Here, it is undisputed that Defendant exhausted his administrative remedies, and therefore, the Court may consider Defendant's motion.

The United States Court of Appeals for the Sixth Circuit has recently held that sentence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry. "The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction. 18 U.S.C. § 3582(c)(1(A)(I).[1]" *Jones, supra,* at *6.

"At step two, a court must 'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id.* (quoting 3582(c)(1)(A)) (emphasis added). "The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)." *Id.* "Thus, if § 1B1.13 is

---

[1] Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii).

still 'applicable,' courts must 'follow the Commissions's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized.'" *Jones, supra* (citing *Dillon, supra*). The Sixth Circuit held in *Jones* that § 1B1.13 does not apply "to cases where an imprisoned person files a motion for compassionate release." *Jones, supra*, at * 7. That means that, '[u]ntil the Sentencing Commission updates § 1B.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*. Because Defendant's compassionate release motion was filed by an incarcerated person, this Court "may skip step two of the § 3582(c)(1)(A) inquiry and ha[s] full discretion to define 'extraordinary and compelling' without consulting the policy statement in § 1B1.13." *Jones, supra*, at * 9.

"At step three, '§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case.'" *Jones, supra,* at * 7 (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

This Court agrees with other courts that have concluded that the COVID-19 pandemic alone does not justify compassionate release to prisoners. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility ..., whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may

6

spread to a particular prison alone cannot independently justify compassionate release[.]").

But Defendant does not assert merely a general concern about contracting COVID. Defendant contends that he has an increased risk of the more severe complications from COVID-19, if he were to contract the virus, because of his medical conditions. Defendant is fifty-six years old and has medical conditions that the Government acknowledges put him at increased risk of the more severe complications from the virus, should he contract it. Those conditions include diabetes and obesity.

Even if this Court were to find that extraordinary and compelling circumstances exist in Defendant's case because of those conditions, this Court concludes, as a matter of its discretion, that consideration of the § 3553(a) factors weighs against granting compassionate release in this case. *See United States v. Ruffin,* 978 F.3d 1000, 1001 (6th Cir. Oct. 26, 2020) ("Even when extraordinary and compelling reasons exist, the statute leaves district courts with discretion to deny relief under a balancing of the sentencing factors in 18 U.S.C. § 3553(a).").

For starters, Defendant was already given a significant break by this Court when he was sentenced to 183 months of imprisonment. The maximum sentence was life and his guidelines range was 262 to 327 months.

As this Court noted on the record at Defendant's sentencing, the offense in this case was a very serious offense. Defendant was involved in a large-scale drug conspiracy. And Defendant was sentenced as a career offender. Beyond this case, Defendant has a lengthy, and very troubling, criminal history. Defendant has a clear pattern of dealing drugs, being imprisoned, and then going right back to it at his first opportunity to do so. Defendant has a very troubling pattern of committing additional offenses while he is on supervision.

Defendant has no vocational skills and a sketchy employment history. Considering all of this, this Court continues to believe that there is a very high probability that Defendant will commit new offenses upon his release and poses a danger to the community.

In sum, consideration of the § 3553(a) factors, including Defendant's history and characteristics, seriousness of the offense, promoting respect for the law, and providing just punishment weigh against Defendant's request for compassionate release. This Court concludes that Defendant is not an appropriate candidate for the extraordinary remedy of compassionate release.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion for Compassionate Release is **DENIED.**

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: November 25, 2020